**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-CV-

JEANNIE WEBB, VICTOR WEBB

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
A foreign corporation domiciled and resident of Illinois,

    Defendants.
_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiffs Jeannie Webb and Victor Webb, pursuant to Fed.R.Civ.P. 8, for a Complaint and Jury Demand against defendant State Farm Mutual Automobile Insurance Company, assert and allege:

**General Allegations**

1. Jeannie Webb and Victor Webb ("Webbs") reside in Del Norte, Colorado.

2. The Webbs are husband and wife and have been married to each other some 26 years.

3. State Farm Mutual Automobile Insurance Company ("State Farm"), is a foreign corporation not domiciled in Colorado but headquartered and residing in Illinois.

4. Complete diversity exists among the parties with the plaintiffs residing in Colorado, defendant State Farm residing in Illinois, and more than $75,000 in dispute among the parties, excluding interest and costs.

5. Venue, personal and subject matter jurisdiction are conferred upon this Court

pursuant to 28 U.S.C. §1332 and Fed.R.Civ.P. 98.

6. From its Tempe, Arizona, office located at 2700 South Sunland Drive, State Farm contracted with the Webbs to provide Underinsured Motorist (UIM) coverage benefits in the amount of $100,000 for injuries or losses caused to them from any negligent motorist under Policy Number 212 90190-F10-06B.

7. On or about March 31, 2015, underinsured motorist Emily Logan from Monte Vista, Colorado, drove her 2006 Honda sedan into the rear of the 1999 Toyota Corolla driven by Jeannie Webb on Colorado Highway 160 in Rio Grande County, Colorado.

8. The collision causing major damage to the Logan Honda as shown:



9. The collision caused major damage to the Webb Corolla as shown:



10. Colorado State Trooper Darrin Rodriguez investigated the crash.

11. Trooper Rodriguez interviewed the at-fault driver.

12. Mrs. Webb was unconscious from the crash and unable to speak with the trooper on the scene.

13. Trooper Rodriguez inspected Colorado Highway 160 in Rio Grande Countyh near mile marker 160.

14. Based on his training, knowledge, experience and investigation of this rear-end collision, trooper Rodriguez determined that motorist Logan, then age 18, caused the collision through negligent careless driving in violation of C.R.S. §42-4-1401 (2) (b).

15. The collision caused damage to Mrs. Webb's back, right hip and brain, as

explained in part by this illustration:



16. The Logan-caused crash required Mrs. Webb to incur reasonable medical care that to date approximate $35,000, for diagnostic images revealing bulging lumbar discs, injections to her right hip, and cognitive therapy, as shown:

**MEDICAL BILLING SUMMARY**

Jeannie Webb

| MEDICAL PROVIDER | AMOUNT |
|---|---|
| Monte Vista EMS | $ 915.02 |
| Rio Grande Hospital | $ 6,144.00 |
| Rio Grande Hospital (MRI - Cervical & Lumbar) | $ 4,805.16 |
| Rio Grande Hospital (Medical) | $ 864.73 |
| Rio Grande Hospital - PT | $12,734.27 |
| SLV Health RMC (MRI Brain-Radiology) | $ 3,564.00 |
| Radiology & Imaging Consultants, PC | $ 342.00 |
| SLV Health (Dr. Cooper) | $ 476.00 |
| MV Clinic 04/08/15 to 05/26/15 | $ 432.00 |
| Rocky Mtn Radiologists | $ 1,358.00 |
| Artemisia Massage | $ 1,350.00 |
| MaryAnn Keatley, PhD | $ 1,188.73 |
| Impact Vision | $ 590.00 |
| **TOTAL** | **$ 34,763.91** |

**FUTURE TREATMENT PLAN**

| | |
|---|---|
| Mary Ann Keatley | $5,000.00 to $5,800.00 |

17. Over her lifetime, Mrs. Webb is expected to incur additional medical expenses for future health care to improve cognitive functioning and/or relieve pain caused by the Logan negligence.

18. With permission of State Farm, Mrs. Webb accepted the maximum liability insurance coverage for motorist Logan of $100,000, enabling her to seek her own coverage benefits of the same amount from State Farm she and her husband had purchased earlier.

19. The State Farm contract promises to "compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle."

20. The Underinsured Motorist (UIM) coverage purchased from State Farm transferred from the Webbs to State Farm certain risks of loss caused to the Webbs by negligent, but underinsured drivers, during their policy period.

21. Such risks of loss include past and future economic losses, non-economic

losses and physical impairment from vital organs such as the human brain being damaged by negligent drivers such as Emily Logan.

22. This specific UIM insurance coverage functions to transfer such risks of loss from the Webbs to State Farm within the terms and conditions of their contract.

23. State Farm admits it owes the Webbs UIM benefits for compensatory damages caused to them by motorist Logan.

24. The Webbs served as law enforcement officers for more than 40 years.

25. Mr. Webb is one of the few officers in law enforcement to have received the Medal of Valor when he was shot three times by a known criminal.

26. After his retirement from law enforcement, Mr. Webb worked at Sandia Laboratories handling sensitive nuclear materials and obtained SCI clearance, one of the highest security clearances in the United States.

27. Mrs. Webb received more than 21 letters of commendation, including Detective of the Year from the Children's Safe House where law enforcement interviewed child victims of crimes.

28. Mrs. Webb worked as Foster Care Coordinator in Colorado when they relocated to Colorado from New Mexico and now works as an independent contractor for the State of Colorado doing foster home studies.

29. Because of injuries from this crash, the Webbs asked State Farm for their benefits from that coverage, including Mr. Webb's compensatory damages for his loss of consortium (for his derivative damages for loss of consortium, a category of damages authorized by Colorado law for spouses to recover for their losses of the aid, comfort, society of their injured spouses.)

30. In response, State Farm through adjuster Thomas Benton wrote that State Farm calculated their compensable losses from their coverage at $10,000 without explaining how State Farm arrived at this calculation.

31. State Farm reassigned the file to Danielle Hoff, who increased the State Farm calculation of compensatory losses from this crash to $15,000 without explanation for how she arrived at that assessment.

32. Despite letters to Mr. Benton repeatedly asking for his reasons why State Farm denied 90% of their claims, the Webbs were denied an explanation of this decision on their claim.

33. State Farm refused to communicate if it has completed its investigation into their claims.

34. State Farm refused to communicate what additional investigation, if any, it needs to complete its investigation of their claims.

35. State Farm refused to communicate if it has consulted with any medical expert on whose opinion it has relied upon in calculating their losses at $15,000, or 15%, of their coverage.

36. State Farm has prepared an injury evaluation report or detail that contains its internal reasons for how it calculates the compensable Webb losses at $10,000 from this coverage.

37. State Farm intentionally decided to conceal from the Webbs its internal analysis containing its reasons for denying the Webb claims without communicating why this analysis has to be kept secret from the Webbs.

38. State Farm refused to communicate to the Webbs that it prepared any such

injury evaluation detail or explanation that identifies its reasons for why State Farm calculates their compensable losses at $15,000, including but not limited to how it calculates their non-economic losses.

39. The Webbs have communicated to State Farm their methodology for how they calculated their non-economic losses through the judicially approved *per diem* approach of calculating daily pain multiplied times the more than 1,000 days of pain the couple has had to endure for pain they did not cause.

40. State Farm has refused to communicate why that judicially approved mechanism for juror calculation of such losses is unreasonable.

41. State Farm has refused to communicate its alternative mechanism for how it calculated each of their non-economic losses, preventing the Webbs from providing State Farm with additional information if necessary to address the State Farm corporate calculation of such losses.

42. State Farm has refused to communicate with the Webbs if it contends any of the medical care and expenses obtained by the Webbs were unreasonable or not necessitated by this collision.

43. State Farm has refused to communicate with the Webbs that it contends any of her medical care is necessitated by factors other than this collision such as any pre-existing, degenerative, condition.

44. State Farm has not communicated that its claims adjustment staff decided to substitute their medical judgment over the medical judgment of Mrs. Webb's medical providers for whether her medical care, treatment and expenses from this collision were reasonable and necessitated by this crash.

45. The refusal by State Farm to communicate its reasons for denying 85% of the Webb claims by withholding any policy language, facts of the crash, facts of medical care provided, facts of medical expenses incurred, or policy language deviates from insurance industry standards and regulations directing insurers to communicate to their insureds the reasons for denying the claim.

46. Colorado statute, C.R.S. §10-3-1104 (1) (h) requires insurers to communicate with their insureds about decisions on the insureds' claims and to give their insureds an explanation of the insurer's decision on the claim, based on the law, policy language and facts of claim.

47. Colorado law fastens a procedural duty of good faith on insurers to obey this statute, the Unfair Claim Settlement Practices Act, C.R.S. §10-3-1104 (1)(h), *Dunn v. American Family Ins. Co.* 251 P. 3rd 1232 (Colo. App. 2010).

48. In light of these obligations, as late as March 2018 State Farm has been asked for explanations for the reasons how State Farm calculated the recoverable benefits for the Webbs at $15,000 without any communication from State Farm explaining its reasons for the claim denial.

49. State Farm decided to conceal from the Webbs its reasons for denying 85% of their claim despite them paying 100% of their premiums for such coverage.

50. State Farm refused to engage in a "fair debate" about the reasons why it refused to provide the Webbs with their full benefits preventing the Webbs from providing any additional information to address any reason from State Farm to justify its willful withholding of their covered benefits.

51. State Farm, accordingly, is estopped from claiming that its decision to deny the

Webbs the full amount of their benefits as "fairly debatable" when it has decided not to engage in a "fair debate."

52. State Farm had the option of having Independent Medical Examinations of Mrs. Webb to assist during its investigation of her claim.

53. State Farm decided it did not need any Independent Medical Examination of Mrs. Webb to assist its investigation of her claim.

54. Since State Farm did not state it required any medical assistance from any Independent Medical Examiner or even a review of her records from any medical examiner, State Farm is now estopped from now seeking any Independent Medical Examination of Mrs. Webb or any evaluation her based on review of her medical records in efforts to backfill its claim file to justify its post-denial decision.

55. State Farm owes a non-delegable duty of good faith and fair dealing to insureds Jeannie Webb and Victor Webb regarding their claim for benefits.

56. State Farm, as part of that duty of good faith, owes the Webbs an obligation to conduct a fair investigation of their claim.

57. State Farm cannot delegate this investigatory function to counsel it retains who owe no duty of good faith to the Webbs but do owe a fiduciary duty only to State Farm.

58. State Farm owes the Webbs a duty of good faith to comply with Colorado law when handling their claims.

59. Colorado law, C.R.S. §§10-3-1115, 10-3-1116, provide that insurers who delay or deny payments of covered benefits without a reasonable basis are subject to statutory penalties.

60. In addition, State Farm was asked to extend the deadline, or statute of limitations, by when the Webbs had to file suit or forfeit the balance of their coverage if State Farm believes it needed additional time to complete any investigation of their claims.

61. The State Farm policy does not offer arbitration as a remedy to fix disputes over the amount of covered benefits owed by State Farm.

62. State Farm claims it continues to investigate their claims, but refuses to extend this deadline by when the Webbs have to file suit or forfeit their rights to obtain any such coverage benefit.

63. The conduct by State Farm as asserted above leaves the Webbs this lawsuit as their last resort to obtain any additional coverage benefits to avoid forfeiting any additional benefits and conferring a financial windfall on State Farm.

64. Colorado statute, C.R.S. §10-1-101, states that Colorado policy "requires that all persons having to do with insurance services to the public be at all times actuated by good faith in everything pertaining thereto, abstain from deceptive or misleading practices, and keep, observe, and practice the principles of law and equity in all matters pertaining to such business."

65. Since C.R.S. §10-3-1104 (1) (h) requires insurers to explain their decisions on claims submitted by insureds, affirm or deny coverage within a reasonable time, and promptly communicate with the insureds about the claim, State Farm as described above did not obey industry standards for claims handling nor obey those statutory requirements or imposed on insurers by the State of Colorado.

**FIRST CLAIM FOR RELIEF**

**(Bad Faith Breach of Contract)**

66. The plaintiffs incorporate all previous allegations or assertions.

67. State Farm acted in bad faith by, among other things, not complying with Colorado statute, industry standards, and laws requiring the insurer to conduct an adequate investigation of their claim, in deciding not to communicate with its insureds about its decisions not to pay all or parts of a submitted claim, and by not explaining how it reached its decision to deny the Webbs their full policy coverage benefits.

68. State Farm acted in bad faith by, among other things:

    - Not communicating if its investigation of their claims has been completed;

    - Not communicating what additional investigation of their claims State Farm needed, if any, to complete its investigation;

    - Not communicating if it was going to delegate any further investigation to lawyers for cross-examination for areas the claims adjusters did not address;

    - Not communicating why it needed no medical evaluation of Mrs. Webb but relying solely on the medical analysis of her condition by its claims adjustment staff;

    - Not communicating what medical credentials, if any, its claims adjustment staff had and upon whose opinions State Farm relied in denying 85% of the covered benefits to the Webbs;

    - Not communicating why the claims adjustment staff placed little value on information from Mrs. Webb's treating therapists concerning the nature and extent of the damage to her brain from this collision;

    - Not communicating to the insureds reasons for why Victor Webb's loss of

consortium claim carries a zero value to State Farm; and

69. State Farm efforts to conduct additional investigation of the Webb claims to backfill its claim file to justify its current position that the Webbs do not merit their full coverage benefit are precluded by Colorado law forbidding insurers from such post-denial misconduct, *Peiffer v.State Farm Mutual Auto. Ins. Co.,* 940 P. 2nd 967 (Colo. App. 1996).

70. Colorado law precludes State Farm from coming up with any other bases for denying the Webbs their full covered benefits other than the reasons expressed so far by State Farm in its letters to the Webbs and their counsel, *Colard v. American Family Mut. Auto. Ins. Co.,* 709 P. 2nd 11 (Colo. App. 1985).

71. The equitable concepts of estoppel, waiver and laches preclude State Farm now from creating additional reasons why State Farm is entitled to deny them the full balance of their coverage, other than what State Farm already has expressed to them as its reasoning for its decisions on their claims.

## SECOND CLAIM FOR RELIEF

### (Statutory Delay)

72. The plaintiffs incorporate all previous allegations and assertions.

73. The Webbs have asked State Farm for an explanation for the reasons explaining why any covered benefits were being delayed or denied.

74. The plaintiffs qualify as first-party insureds because they seek benefits owed to them or on their behalf.

75. State Farm, without a reasonable basis, delayed or denied paying the Webbs any covered benefits it had calculated as a recoverable benefit for her physical

impairment, discomfort, embarrassment, inconvenience, loss of time, and pain – non-economic losses -- caused by the Logan crash, entitling the plaintiffs to remedies provided by C.R.S. §§ 10-3-1115 and 10-3-1116.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract)

76. The plaintiffs incorporate all previous allegations and assertions.
77. The plaintiffs have requested their insurer, State Farm, to provide them with contract benefits representing the amount of compensatory damages they are entitled to recover from the negligent but underinsured driver, Logan.
78. The Webbs have provided proof of their losses to State Farm.
79. The insurance contract with State Farm promises to pay them compensatory damages they are legally entitled to collect from the underinsured motorist.
80. The plaintiffs have established entitlement to the covered benefits their premiums purchased.
81. The defendant refuses to provide them with any of the benefits they purchased in their insurance contract.
82. The defendant is in breach of that contract and owes the Webbs their purchased contract benefits, along with whatever consequential damages caused by the insurer's breach.

**WHEREFORE,** the plaintiffs pray for judgment against the defendants for their economic and non-economic losses and damages, physical impairment losses to Mrs. Webb, pain, loss of time, inconvenience, worry, anxiety, and impairment of the quality of their lives caused by this collision with motorist Logan, for costs, statutory interest

accruing since March 31, 2015, for expert witness fees, attorney's fees, statutory remedies, for consequential damages and any other relief provided by law.

**JURY TRIAL DEMANDED**

Respectfully submitted this 26th day of March 2018.

A duly signed original is on file at
The Kaudy Law Firm, L.L.C.

*/s/ Richard M. Kaudy*
Richard M. Kaudy, #12345
Cajardo R. Lindsey, #33672
Kaudy Law Firm LLC
333 W. Hampden Avenue, Suite 850
Englewood, CO 80110
Phone: (303) 623-1885
Fax:  (303) 623-1825
Email:  rkaudy@kaudylaw.com
clindsey@kaudylaw.com

ATTORNEYS FOR PLAINTIFFS